UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

CHRIS JOHNSON,                                    :
                Petitioner,                 :
                                :
         v.                                       :     No. 2:24-cv-05389
                                :
KENNETH HOLLIBAUGH, THE DISTRICT      :
ATTORNEY OF THE COUNTY OF             :
PHILADELPHIA, and THE ATTORNEY        :
GENERAL OF THE STATE OF               :
PENNSYLVANIA,                         :
                Respondents.                :

_____

**O P I N I O N**

**Report and Recommendation, ECF No. 21—Adopted in Part**
**Motion to Appoint Counsel, ECF No. 20 – Dismissed as Moot**

**Joseph F. Leeson, Jr.**                                   **February 5, 2026**
**United States District Judge**

## I.    INTRODUCTION

Petitioner Chris Johnson filed a *pro se* Petition Under 28 U.S.C. § 2254 for Writ of

Habeas Corpus, in which he claims that his arrest warrant was invalid and that his trial counsel

and PCRA counsel were ineffective at various stages of his litigation. *See* Pet., ECF No. 5.

Magistrate Judge Pamela A. Carlos issued a Report and Recommendation ("R&R"), *see* ECF

No. 21, in which she recommends that the Petition be dismissed as untimely. After review of the

habeas petition, the R&R, and Johnson's *pro se* objections, and for the reasons below, the Court

overrules the objections, adopts the R&R in part, and denies Johnson's Petition.

## II.    BACKGROUND

### A.  Factual Background and Habeas Petition

In the R&R, Magistrate Judge Carlos gave a thorough overview of the factual and

procedural history of the case, *see* R&R, to which Johnson does not object, *see* Motion

Answering to Report & Recommendations ("Obj."), ECF No. 24. The Court accordingly adopts the factual and procedural history as summarized in the R&R, which are incorporated herein. *See* R&R. Worth mentioning, however, is Johnson's underlying conviction and sentence. In 2017, Johnson was convicted of first-degree murder, firearms not to be carried without a license, carrying firearms on public streets in Philadelphia, and possessing instruments of crime, *see Commonwealth v. Johnson*, No. 513 EDA 2018, 2018 WL 6715562, at *1 (Pa. Super. Ct. Dec. 21, 2018), arising from the shooting death of Marquise Matthews. The court sentenced Johnson to life imprisonment without parole. *See id.*

After a series of appeals and PCRA petitions,[1] Johnson wrote a Letter to this Court, dated September 30, 2024, explaining that he intended to file a habeas petition. *See* Letter, ECF No. 1. On December 25, 2024, Johnson placed a Petition for Writ of Habeas Corpus in the prison mailing system, *see* Pet. at 19, and the same was docketed with this Court on January 2, 2025, *see id.* In his Petition, Johnson argues the following grounds for habeas relief: (i) that his arrest warrant was invalid and "all evidence should have been motioned in limine or objected at trial"; (ii) that "trial counsel was ineffective because he didn't present an alibi defense"; (iii) that "trial counsel was ineffective because he didn't move to exclude the Commonwealth's firearms examiner testimony, move to limit the scope of her testimony, or effectively cross-examine her"; and (iv) that "P.C.R.A. counsel failed to produce newly discovered evidence." *See id.* at 8-15 (*i.e.*, ¶ 11) (cleaned up). Respondents filed a Response to the Petition on May 5, 2025. *See* ECF No. 19. Johnson then filed a request for appointment of counsel, which was docketed on June 6, 2025. *See* ECF No. 20.

---

[1]   The dates of Johnson's appeals of sentence and PCRA petitions and appeals are detailed in the R&R, ECF No. 21, and incorporated herein.

**B.  The Report and Recommendation and Objections**

On July 14, 2025, Magistrate Judge Carlos issued an R&R in which she found Johnson's Petition to be untimely, and found that none of the timeliness exceptions applied, because (i) statutory tolling did not salvage the Petition, (ii) he is not entitled to equitable tolling of his claims, and (iii) he has not provided the Court with a sufficient basis to invoke the actual innocence exception. *See* R&R. On August 30, 2025, Johnson mailed to the Court a document entitled "Motion Answering to Report & Recommendations and Motion Requesting for Appointment of Counsel Based on Newly Discovered Evidence to File a Thorough Brief," which was docketed on September 8, 2025. *See* Obj. The Court construes this document as Johnson's *pro se* Objections to the Report & Recommendation, which also includes another request for appointment of counsel. *See id.*

In his Objections, Johnson suggests that he is actually innocent—a claim not explicitly made in his Petition but nonetheless considered in the R&R. *See id.* Johnson objects to the R&R's conclusion that he lacks support for an actual innocence claim, stating that he "obtained documents/evidence pertaining to his actual innocence," including "signed [a]ffidavits" by two individuals, "Braheem Jenrette and Tina Williams." *Id.* at ¶ 6. Johnson alleges that these affidavits identify another individual, Duane "Wayne" Hicks, as the murderer, and provide an alibi for Johnson on the night of the murder. *See id.* at ¶ 15. Johnson states that he "enclosed" and "attached" these affidavits along with his Objections, *id.* at ¶¶ 8-9, but none are attached, and his cover letter for the document attempts to explain why: "I'm submitting this motion without the two affidavits so I won't miss the deadline[.] The affidavits of Tina Williams and Braheem Jenrette are en route to me as we speak via mail. . . . as soon as I receive the two affidavits I will send them straight to you." *See id.* (cleaned up). As of the date of this Opinion, the Court has not

received copies of these witness affidavits and has not received any additional filings from Johnson.

In his Objections, Johnson also reiterates his ineffectiveness of counsel argument, alleging that his trial and PCRA counsel were ineffective for failing to contact and obtain affidavits or witness testimony from Mr. Jenrette and Ms. Williams at an earlier stage of litigation. *See id.* at ¶¶ 7, 16. Johnson contends that such testimony would have proven his innocence and likely changed the outcome of his proceedings. *See id.* Johnson also asks the Court to forgive any deficiencies in his filings because he suffers from numerous "physical, psychological, and mental health challenges." *See id.* at ¶ 12.

## III.    LEGAL STANDARDS

### A.    Report and Recommendation – Review of Applicable Law

When objections to a report and recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a de novo review of those portions of the report to which specific objections are made. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984) ("providing a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process"). "District Courts, however, are not required to make any separate findings or conclusions when reviewing a Magistrate Judge's recommendation de novo under 28 U.S.C. § 636(b)." *Hill v. Barnacle*, 655 F. App'x 142, 148 (3d Cir. 2016). The district court "may accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1)(C).

**B.      Certificate of Appealability – Review of Applicable Law**

A certificate of appealability ("COA") should only be issued "if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" *Tomlin v. Britton*, 448 F. App'x 224, 227 (3d Cir. 2011) (citing 28 U.S.C. § 2253(c)). "Where a district court has rejected the constitutional claims on the merits . . . the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court "denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," a COA "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

## IV.    ANALYSIS

This Court has conducted a de novo review, and agrees with the conclusions in the R&R that Johnson's Petition was untimely, that he is not entitled to equitable tolling, and that he has not alleged sufficient facts in support of actual innocence. The Court disagrees, however, with the suggestion in the R&R that Johnson filed his first PCRA petition "after the [habeas] limitations period had already elapsed." *See* R&R at 7. Accordingly, the Court will overrule Johnson's objections and adopt the R&R in part.

**A.      Statutory Tolling**

"A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). This

limitation period runs from the latest of four occurrences,[2] including "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* at § 2244(d)(1)(A); *see also Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009) ("[T]he finality of a state-court judgment is expressly defined by statute as 'the conclusion of direct review or the expiration of the time for seeking such review.'") (citing 28 U.S.C. § 2244(d)(1)(A)). Where a prisoner does not appeal his conviction or sentence to the state's highest court, his judgment becomes "final" under § 2244(d)(1)(A) when the time for seeking review with the state's highest court expires. *Gonzalez v. Thaler*, 565 U.S. 134, 150, 154 (2012). Where a prisoner appeals to the state's highest court, and thereafter chooses to file a petition for a writ of certiorari with the United States Supreme Court, his judgment becomes "final" when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari." *Id.* at 149. Where a prisoner appeals to the state's highest court but does not subsequently file a petition for a writ of certiorari, his judgment becomes "final" upon "expiration of the time for seeking such review." *Id.* at 149-50; *Jimenez*, 555 U.S. at 119 ("[I]f the federal prisoner chooses not to seek direct review in [the Supreme] Court, then the

---

[2]    Under 28 U.S.C. § 2244(d)(1), the 1-year limitation period "shall run from the latest of" the following four occurrences:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

conviction becomes final when 'the time for filing a certiorari petition expires.'") (quoting *Clay v. United States,* 537 U.S. 522, 527 (2003)). A petitioner's window to appeal a decision of the Pennsylvania Superior Court to the Pennsylvania Supreme Court is thirty days. 210 Pa. Code r. 1113 ("a petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days after the entry of the order of the Superior Court"). A petitioner's certiorari window closes ninety days after entry of the highest state court's order denying discretionary review. U.S. Sup. Ct. R. 13. Direct review of a conviction "cannot conclude for purposes of § 2244(d)(1)(A) until the availability of direct appeal to the state courts . . . and to [the Supreme] Court . . . has been exhausted." *Jimenez*, 555 U.S. at 119 (internal quotations omitted).

The limitations period is also tolled during the pendency of "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." 28 U.S.C. § 2244(d)(2). A petition under the Post Conviction Relief Act (PCRA) "shall be filed within one year of the date the judgment becomes final," 42 Pa.C.S. § 9545(b)(1), and while pending, such time "shall not be counted toward any period of limitation" under 28 U.S.C. § 2244(d).

Here, the "latest" occurrence under § 2244(d)(1) is the date from which Johnson's judgment in the state court became "final." Johnson appealed his conviction and sentence all the way to the Pennsylvania Supreme Court, but did not subsequently file a petition for a writ of certiorari, R&R at 3, so his judgment became "final" upon "expiration of the time for seeking such review." *Gonzalez*, 565 U.S. at 149-50; *Jimenez*, 555 U.S. at 119. Because Johnson's appeal to the Pennsylvania Supreme Court was denied on May 7, 2019, R&R at 3, his window to file a petition of certiorari in the United States Supreme Court closed ninety days thereafter, on August

5, 2019, *see* U.S. Sup. Ct. R. 13. This is the date on which Johnson's state court judgment became "final."

Johnson then had one year, until August 5, 2020, to either file a PCRA petition or a petition for writ of habeas corpus. Had he filed a PCRA petition within that one-year window, his habeas limitations period would have been tolled for the number of days remaining, *i.e.*, the number of days between his PCRA filing date and August 5, 2020. However, his PCRA filing date *was* August 5, 2020. *See* R&R at 3. Johnson waited until the 365th day of his one-year limitations period to file his first PCRA petition, effectively pausing the habeas clock on the last day. This meant that Johnson had only until the date on which his first PCRA petition was no longer "pending" to file his habeas petition.

The Pennsylvania Superior Court affirmed the PCRA court's denial of Johnson's first PCRA petition on October 19, 2022, and Johnson did not seek review of this decision by the Pennsylvania Supreme Court. *See id.* Thus, the judgment regarding his first PCRA petition became "final" (and was no longer pending) when his time to seek review in the Pennsylvania Supreme Court elapsed—"30 days after the entry of the order of the Superior Court." 210 Pa. Code r. 1113. For Johnson, this date was November 18, 2022. Yet, he waited until September of 2024 to initiate his habeas proceedings. *See* Letter. So, he was at least one year and ten months too late. The Court therefore agrees with the R&R's conclusion that Johnson's habeas petition is untimely because "it was incumbent upon [him] to file his habeas petition with this Court during the pendency of his PCRA proceedings." R&R at 7-8.

Separately, however, the R&R also states that when Johnson filed his first PCRA petition on August 5, 2020, "all 365 days of the limitations period had already elapsed." *See id.* at 7. The Court cannot reconcile this with the above conclusion that the first PCRA petition tolled the last

8
020526

day of the habeas limitations period. Either the habeas limitations period had expired by the time Johnson filed his first PCRA petition, or the filing of that petition paused the habeas clock on the last available (365th) day, but both cannot be true at once. This Court finds the latter conclusion to be an accurate description of what occurred here: the habeas limitations period was tolled on the last day, and only for the pendency of the PCRA petition. Thus, because Johnson failed to file his habeas petition at any point during the pendency of his first PCRA petition, it is untimely. Because the Court disagrees with the suggestion that the habeas limitations period had already elapsed, it will adopt the R&R's timeliness conclusion in part.

The Court also notes that Johnson appears to suggest that another PCRA finality date does—or should—exist. In a May 4, 2023 letter to the state court, Johnson stated that he was unaware of his deadline to appeal his PCRA determination to the Pennsylvania Supreme Court because his attorney did not tell him of the Pennsylvania Superior Court's October 2022 decision, and he did not learn of the same until April 20, 2023. *See* R&R at 3 n.2. This letter appeared to request additional time to appeal his PCRA petition to the Pennsylvania Supreme Court. Importantly, however, the state court did not construe this letter as a continuation of his initial PCRA, but as a new *pro se* PCRA petition.[3] *See id.* at 3. Johnson then filed either an amendment or replacement to this PCRA petition on July 19, 2023.[4] *Id.*

---

[3]   In his original Letter to this Court, Johnson appears to indicate that each subsequent PCRA petition filed after his first was intended to be a continuation of, or amendment to, his first PCRA petition, in which he added "new issues." *See* Letter, ECF No. 1 ("Another PCRA was filed but it was suppose[d] to be amended to the first PCRA and not a subsequent PCRA.").

[4]   It is unclear whether this July 19, 2023 PCRA petition was an amendment of his May 2023 letter petition (altogether comprising his second PCRA petition), or a separate petition (*i.e.*, a third PCRA petition). Johnson maintains that he thought all of his subsequent PCRA filings were continuations of his first PCRA Petition, despite his counsel and the Court informing him that his first PCRA had concluded. *See* Letter (I've told [appointed PCRA counsel] and the lower court that the PCRA filed was not a subsequent PCRA. It was an amended PCRA to the first one.") (cleaned up).

By the time Johnson filed his second PCRA petition, more than one day had passed since the final resolution of his first PCRA petition. Since his first petition was no longer "pending," Johnson's second PCRA petition did not serve to toll his habeas limitations period, which was tolled only for the pendency of his first PCRA petition. *See Dunbar v. Oliver*, 21-cv-05235, 2024 WL 3264711, at *4 (E.D. Pa. Apr. 16, 2024) ("A state court filing after the federal habeas filing deadline does not revive it.") (citing *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004)), *report and recommendation adopted*, 21-cv-5235, 2024 WL 3260882 (E.D. Pa. July 1, 2024). Because Johnson did not attempt to initiate habeas proceedings at all during that time, his habeas petition is now untimely.

### B.    Equitable Tolling

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Equitable tolling is appropriate when "principles of equity would make the rigid application of a limitation period unfair." *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011) (citing *Miller v. New Jersey State Dep't of Corr.,* 145 F.3d 616, 618 (3d Cir. 1998). Yet, the Third Circuit has cautioned that "equitable tolling of the limitations period is to be used sparingly and only in rare circumstances." *Pennington v. Tice*, No. 17-cv-0330, 2018 WL 7683408, at *4 (E.D. Pa. Jan. 29, 2018) (citing *LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005)), *report and recommendation adopted*, 365 F. Supp. 3d 579 (E.D. Pa. 2019). "The fact that a petitioner is proceeding pro se does not insulate him from the 'reasonable diligence' inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling." *Ross v. Varano*, 712 F.3d 784, 799–800 (3d Cir. 2013) (citation omitted). While Johnson does not explicitly assert that he is entitled to

equitable tolling, the R&R nonetheless considered these arguments because his Petition

"appear[ed] to argue that his attorney's deficient performance, together with his limited

education level and mental health issues, constitute 'extraordinary circumstances' to warrant

equitable tolling." R&R at 10. When the R&R concluded that equitable tolling was not

warranted, Johnson responded in his Objections that (i) his "Counsel at trial and PCRA counsel

were ineffective for failing to investigate and present such a crucial evidence that would have

proved the innocence of Petitioner," and "[h]ad Counsel made effort to present this evidence

during trial, the outcome of the proceedings would have been different," Obj. at ¶ 16, and (ii) he

has "physical, psychological, and mental health challenges [and] is unable to express his

thoughts in an articulate manner [and] write a brief in a sensible way because of his intellectual

disabilities," *id.* ¶ 12. The Court will address each objection in turn.

### 1. Attorney Misconduct

Generally, in non-capital cases, "attorney error is not a sufficient basis for equitable

tolling of the AEDPA's one-year period of limitation."[5] *Schlueter v. Varner*, 384 F.3d 69, 76 (3d

Cir. 2004) (citing *Johnson v. Hendricks*, 314 F.3d 159, 163 (3d Cir. 2002)); *see Merritt v. Blaine*,

326 F.3d 157, 169 (3d Cir. 2003) (In "non-capital cases, attorney error, miscalculation,

inadequate research, or other mistakes have not been found to rise to the 'extraordinary'

circumstances required for equitable tolling.") (internal quotations omitted). Courts rarely find

that an attorney's malfeasance, alone, is enough to equitably toll the habeas limitations period,

---

[5] There are narrow exceptions to this rule. *See, e.g., Pabon v. Mahanoy*, 654 F.3d 385, 400 (3d Cir. 2011) (holding that that complete denial of access to legal assistance, coupled with inability to read or understand English and lack of access to translation, can trigger equitable tolling; *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999) (finding that an attorney's affirmative misrepresentation to his client, coupled with the client's diligence in pursuing her claim, warranted equitable tolling).

unless the misconduct is "egregious" and the petitioner has shown "due diligence in pursuing the matter." *Schlueter*, 384 F.3d at 77.

Indeed, as recounted above, Johnson argues in his Petition that he was not made aware of the Pennsylvania Superior Court's affirmance of the denial of his first PCRA petition until months later, and he attributes this delay to his attorney's negligence. *See* Section IV(A), *supra*. Yet, Johnson does not allege that this miscommunication was intentional, or that his attorney willfully missed the state appeal deadline. Conflictingly, Johnson argues that, at or around the time that the Pennsylvania Superior Court affirmed the denial of his first PCRA petition, he was in solitary confinement and unable to communicate with his attorney. *See* R&R at 5 (citing ECF No. 20). Though the dates are unclear, it appears that Johnson was released from solitary confinement by May 4, 2023, when he wrote a letter to the state court. *Id.* at 3. Still, he did not attempt to initiate habeas proceedings until over a year later, and has not alleged that he made earlier efforts to do so, or that he previously requested his attorney to do so.

Now, Johnson's Objections assert (i) that his trial counsel was ineffective for failing to locate two "crucial" witnesses, Braheem Jenrette and Tina Williams, "prior to and during trial," because their testimony would have changed the outcome of his proceedings, and (ii) that his PCRA counsel was similarly ineffective for failing to obtain the witnesses' testimony as evidence of his actual innocence. *See* Obj. at ¶¶ 7, 16. Notwithstanding the fact that Johnson alleges that this witness testimony was obtainable at trial, and yet somehow also constitutes "newly discovered evidence" of actual innocence that was not available at trial, *see id.*, the state court record suggests that the alleged witnesses were unwilling to give testimony previously. *See* PCRA Counsel's December 8, 2023 No-Merit Letter ("No-Merit Letter") 306, ECF No. 13 ("these witnesses have proved to be uncooperative with both [trial] counsel and petitioner").

Moreover, Johnson has alleged that the witnesses produced "signed affidavits," *see* Obj. at ¶ 6, but has so far been unable to provide copies of the same to the Court. Thus, there is no indication that his counsel's inability to procure the same witness testimony at an earlier stage is an example of their ineffectiveness, let alone an example of egregious behavior. Altogether, Johnson's allegations of ineffective assistance of counsel do not rise to the level of "extraordinary conduct" necessary for equitable tolling. Even if they did, Johnson would have to demonstrate that he has been diligent in pursuing his claims even when his attorney was not, which is not evident from the record. The Court agrees with the R&R that Johnson is not entitled to equitable tolling.

### 2. Mental or Cognitive Impairment

Mental incompetence is also "not a *per se* cause for equitable tolling." *Champney v. Secretary Pennsylvania Dep't of Corr.*, 469 F. App'x 113, 117 (3d Cir. 2012) (citing *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001), *overruled in part on other grounds*, *Carey v. Saffold*, 536 U.S. 214 (2002)). "For tolling to be appropriate, the alleged mental incompetence must somehow have affected the petitioner's ability to file a timely action." *Id.* (internal quotations omitted). In his initial Letter to the Court, Johnson states that he has only a tenth grade reading level, suffers from several mental health issues, and was recently in solitary confinement. *See* ECF No. 1. In one of his motions for assistance of counsel, Johnson states that he is illiterate, that he suffers from schizophrenia and multiple mood disorders, that he does not know how to file a brief, and that he does not know how the appeals process works. *See* ECF No. 20. Lastly, in his Objections to the R&R, Johnson asserts that he is "a layman when it comes to understanding of law," Obj. at ¶ 1, that he "struggles with [s]erious intellectual and psychological disabilities," *id.* at ¶ 3, and that he suffers from "physical, psychological, and mental health challenges"

making him "unable to express his thoughts in an articulate manner," to "write a brief in a sensible way," *id.* at ¶ 12, and to "concentrate, speak, and articulate his thoughts," *id.* at ¶ 13. At no point, however, does Johnson assert that these alleged limitations prevented him from *timely* filing a habeas petition.

The Court takes note of Johnson's ability, both *pro se* and through counsel, to file his first and subsequent PCRA petitions in a timely manner and within the statutory limitations period. Where a petitioner alleges mental incompetence as a basis for equitable tolling, but demonstrates an ability to comply with other procedural deadlines and requirements, his "participation in court proceedings over an extended period of time compel the conclusion that the extraordinary remedy of equitable tolling is not warranted here." *Champney*, 469 F. App'x at 118. Moreover, the development of certain mental illnesses like depression[6] have been held to be "a common fact of prison life," and cannot, without more, provide "a sufficient basis for tolling." *Wilson v. Stickman*, 03-cv-699, 2005 WL 1712385, at *2 (E.D. Pa. July 21, 2005). Thus, the Court finds that Johnson is not entitled to equitable tolling on the basis of mental health concerns or cognitive impairment.

### C.    Actual Innocence

A habeas petitioner may get around the one year habeas statute of limitations "'to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief' where the petitioner makes 'a credible showing of actual innocence.'" *Satterfield v. Dist. Attorney Philadelphia*, 872 F.3d 152, 159 (3d Cir. 2017) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013)). To be credible, an actual innocence claim requires a petitioner "to support

---

[6]    The Court mentions this as an example because Johnson has alleged that he has suffered from suicidal ideation resulting from depression and other mental illnesses while imprisoned. It is suggested that these concerns led to his period in solitary confinement.

his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "[A] petitioner asserting actual innocence may not avail himself of the exception 'unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Satterfield*, 872 F.3d at 159 (quoting *McQuiggin*, 569 U.S. at 386; *Schlup*, 513 U.S. at 329).

Here, Johnson explicitly challenges the R&R's finding that he lacks sufficient evidence in support of actual innocence. Johnson's Objections reference two "signed affidavits" allegedly made by one Braheem Jenrette[7] and one Tina Williams. Johnson purports that Mr. Jenrette can positively identify the shooter as someone other than Johnson, and that Ms. Williams can provide an alibi for Johnson's whereabouts on the night of the murder because she was with him. At the time he filed his Objections, Johnson indicated that these affidavits were forthcoming; that they were "en route to [him] as we speak via mail." *See* Obj. Yet, to date, Johnson has not furnished the Court with copies of these alleged affidavits.

In any case, this argument is not new. In his *pro se* PCRA petition filed in 2023, Johnson listed Mr. Jenrette and Ms. Williams as potential witnesses that should have been contacted on his behalf earlier in his litigation. *See* No-Merit Letter, at 301-306 (discussing *Commonwealth v. Johnson*, CP-51-CR-0001191-2017). Later, on December 8, 2023, Johnson's then-appointed PCRA counsel wrote a "no-merit" letter to the Philadelphia County Court of Common Pleas, which addressed Johnson's innocence claim:

---

[7]     Spellings of this alleged witness's last name differ. Some exhibits from the state court record indicate that it is spelled "Genrette," *see* No-Merit Letter, ECF No. 13, at 306, but Johnson indicates that the individual's name is spelled "Jenrette," *see* Obj. at ¶ 6.

> Investigation by the undersigned has failed to verify [Johnson's] claim as these witnesses have proved to be uncooperative with both counsel and petitioner. Moreover, this is not a new claim. According to petitioner he furnished this information to his trial counsel and his direct appeal counsel and prior PCRA counsel. Thus, this claim is also time barred as well as unsubstantiated.

*Id.* at 306. The Court agrees that Johnson's actual innocence allegations are unsubstantiated. Johnson's inability to produce copies of the witness affidavits that were allegedly "en route" to him in August of 2025, coupled with the fact that these witnesses appear to have been uncooperative since at least 2023, does not lend support for Johnson's argument. Moreover, Johnson fails to supplement his allegations with factual details regarding the alleged witness testimony, including how he learned of it and whether the witnesses obtained their information firsthand or via another source. *See* R&R at 13. Without anything more to support Johnson's innocence allegations, the Court is unable to find that Johnson possesses "new reliable evidence," *Schlup*, 513 U.S. at 324, that would have changed the outcome of his trial had it been available at the time, *Satterfield*, 872 F.3d at 159. The Court agrees with the R&R's conclusion that no basis for the actual innocence exception exists here. Accordingly, because it is untimely and no exception applies, the Petition for Writ of Habeas Corpus will be dismissed.

### D. Motion for Assistance of Counsel

Johnson has on several occasions requested that he be appointed counsel in this case. *See e.g.*, ECF Nos. 20, 24. However, because his Petition is being dismissed on the basis of untimeliness, this request is moot. Johnson's Motion for Assistance of Counsel, ECF No. 20, will be dismissed accordingly.

### E. Certificate of Appealability

A certificate of appealability shall not issue, as jurists of reason would not find it debatable whether this court was correct in its procedural ruling regarding the untimeliness of

16
020526

Johnson's habeas petition. *Slack*, 529 U.S. at 484. The Court finds that a certificate of appealability is not warranted.

## V.    CONCLUSION

After de novo review of Johnson's habeas petition, the response thereto, the state court record, the R&R, Johnson's Objections thereto, and for the reasons mentioned above, the R&R is adopted in part. The Court finds that Johnson's Petition for Writ of Habeas Corpus is untimely and that he has not invoked statutory or equitable tolling, nor pled an actual innocence exception to the timeliness requirement. Accordingly, the Court adopts the findings of the R&R that (1) Johnson is not entitled to habeas relief and (2) that there has been no substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability. The Petition, ECF No. 5, is dismissed as untimely. A separate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

020526